# City of Huntsville *v.* Huntsville Gas-Light Co. *et al.*

*Bill in Equity to enforce Contract for Transfer of Stock in Private Corporation, and for Account.*

1. *Contract by agent in his own name, and under seal.*—R. W. C. owning about one-third of the capital stock in an incorporated gas-company, which had ceased to do business, and R. E. C. desiring to purchase a controlling interest in the stock of the company, with a view to revive and enlarge the business; the two parties entered into a written contract, to which their individual names were subscribed, and their seals affixed, purporting to be made between R. W. C. as party of the first part, and R. E. C. as party of the second part, and containing these stipulations: "the said R. W. C. hereby obligates himself to procure and effect, within thirty days from this date, the transfer to said R. E. C. of all the capital stock in the said gas-company, and to procure, within the same time, a conveyance to said R. E. C. of the lots" on which the gas-works were erected; "and the said R. E. C., on condition that said transfer and conveyance of title are procured and made within said thirty days, and in consideration thereof, hereby agrees and promises to pay to said R. W. C. in cash, immediately on being notified that said transfer and conveyance have been made as agreed on, the sum of $1,000, and further agrees and undertakes to re-transfer to said R. W. C. stock in said company" to a specified amount, not exceeding one-third of the stock procured to be transferred to said R. E. C.; "and when said transfer and re-transfer of stock are effected as above provided, it is agreed that the said R. E. C. will, within a reasonable time, proceed to repair and put in operation the gas-works of said company," and shall be entitled to new stock to the amount of his expenditures; "it being hereby agreed, that when said transfer and re-transfer of stock are made as above provided, the said R. E. C. and R. W. C. will, as the stockholders in said company, provide by resolution for the increase of stock, and for the issue of new stock to the said R. E. C. to the amount of his expenditures," &c. *Held*, that this was the personal contract of R. W. C., and carefully excluded the idea that he was acting as the agent or representative of the other stockholders in the old company.

2. *Same; transfer of stock held by municipal corporation, under resolution of board of aldermen.*—R. W. C. was, at the time said contract was entered into, the mayor of the city in which the gas-works were located, and which owned some of the capital stock in the company; and he submitted to the board of aldermen a written communication relative to the

contract, advising the transfer of the city's stock as provided by the contract, representing that it bound R. E. C. to pay $1,000 to the company, to be applied in payment of its debts, and to "issue new stock to the present stockholders." By resolution of the board, entered on its minutes, the transfer of the city's stock to R. E. C., "in compliance with contract entered into between him and R. W. C.," was authorized and declared, and the mayor was instructed to make the proper assignment on the books of the company in his official capacity; and it was so made by R. W. C. officially. *Held*, that the transfer being authorized by the resolution of the board, and duly made as authorized, the city could not complain that the contract was misunderstood or misinterpreted, R. E. C. not being a party to the error or mistake.

3. *Action by principal, on contract made by agent.*—Although the general rule may be, that where an agent, having proper authority, contracts in his own name for the benfit of his principal, the latter, if unknown, and, perhaps, also if known or disclosed to the other contracting party, may, at his election, sue on the contract in his own name; but it is a recognized exception to this rule, that where the agent has been allowed to contract in his own name, without notice of his agency, the principal takes the contract subject to all the rights and equities available to the other party as against the agent if he were suing.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The Huntsville Gas-Light Company was organized, under the general law regulating the organization of private corporations, on the 4th April, 1856, and procured a special charter, or act of incorporation from the General Assembly, on the 21st February, 1860. It erected gas-works, laid pipes in the streets of Huntsville, and continued to do business as authorized by its charter until some time during the year 1862, when, in consequence of the war then flagrant, it ceased or suspended operations. At that time, its capital stock consisted of 293 shares, at the nominal value of $25 each; of which shares, the city of Huntsville owned 54, Robert W. Coltart owned 110, and the others were distributed among about eighty other persons. On the 13th June, 1867, with a view to the re-organization of the company, or to the erection of new gas-works in Huntsville, a contract was entered into between said R. W. Coltart and R. E. Coxe, which, as reduced to writing and signed by both parties, was in these words:

"These articles of agreement, made and entered into this 13th day of June, 1867, by and between Robert W. Coltart, of the city of Huntsville, Alabama, of the first part, and Robert E. Coxe, of the city of Poughkeepsie, New York, of the second part, witnesseth, that in consideration of the covenants and agreements hereinafter made by the said Coxe, the said Coltart hereby obligates himself to procure and effect, within thirty days from this date, the transfer to said Coxe of all the capital stock in the Huntsville Gas-Light Company, and also to procure, within the same time, a conveyance to said Coxe of the title to lots Nos. 11 and 12 in the city of Huntsville, sold by

the M. & C. R. R. Co. And the said Coxe, on his part, on condition that said transfer of stock and conveyance of title are procured and made within said thirty days, and in consideration thereof, and of the other agreements in these articles expressed, hereby agrees and promises to pay to the said Coltart, in cash, immediately on being notified that said transfer and conveyance have been made as agreed·on, and within said thirty days, the sum of one thousand dollars. He further agrees and undertakes to re-transfer to said Coltart stock in said company to the amount of $2,500, provided that does not exceed one-third of the entire amount of stock in said company transferred to said Coxe; and if $2,500 should be more than one-third of the entire amount of stock, then said Coxe is to re-transfer to said Coltart one-third of the stock so transferred to him by Coltart. When said transfer and re-transfer of stock are effected as above provided, it is further agreed the said Coxe will, within a reasonable time thereafter, proceed to repair and put in order and operation the gas-works of said company ; and it is expressly agreed and understood, that the said Coxe is to be entitled to receive, and is to have issued to him, as the expenditures are made, new stock in said company, to the amount of any sum or sums he may expend in repairing, improving, or extending said gas-works, or otherwise adding to or improving the property of said company ; it being hereby agreed, that when said transfer and re-transfer of stock are made as above provided, the said Coxe and Coltart will, as the stockholders in said company, provide by resolution for the increase of stock, and the issuance of new stock to said Coxe to the extent of expenditures that may be incurred by him for the purpose above mentioned. The obligation of said Coxe to repair and put in order and operation the said gas-works ·is only binding upon said Coxe in his lifetime, and does not bind his estate after his death. And to secure the performance of the undertakings and agreements herein made, each of the parties hereto binds himself to the other in the penalty of one thousand dollars, to be forfeited by the said parties respectively on the failure of such party to perform the agreements herein expressed. In witness whereof, the said parties have hereto set their hands and seals, this 13th day of June, 1367.            " ROBERT W. COLTART [Seal.]

" ROBERT E. COXE [Seal.] "

Of the $1,000 which Coxe bound himself to pay by the terms of this contract, $400 were paid on the 10th July, and $600 on the 1st August. A credit was entered by indorsement on the contract, for each of these payments, signed *Robert W. Coltart;* and in the last credit or receipt these words were added : " And inasmuch as I have not transferred to said Coxe all of the capital stock of the Huntsville Gas-Light Company, it is expressly

agreed, that said Coxe shall be bound to re-transfer to me only so much of said stock transferred, or which shall be transferred to him under the within contract, as, with the stock not so transferred to him, shall amount to one-third of said capital stock ; it being the intention of the parties, that said Coxe shall retain two-thirds of the entire capital stock of said company."

At the time this contract was entered into, said Robert W. Coltart was the mayor of the city of Huntsville ; and on the 18th June, 1867, he submitted to the board of aldermen a written communication in reference to said contract, in these words : " I call your attention to an agreement entered into between Robert E. Coxe and myself, in regard to the Huntsville Gas-Light Company.  Said Coxe proposes, that if the stockholders will surrender to him the stock of said company, he will pay one thousand dollars to the company, to be applied to the payment of debts of the company ; issue new stock to the present stockholders, to the amount $1,500, and erect new works.  The proposition has met with the approval of the stockholders who have been advised with.  I recommend that you transfer the stock owned by the city, in compliance with this agreement ; " signed *Robert W. Coltart.*  At the same meeting of the board of aldermen, on consideration of this communication, the following resolutions were adopted by them :  " *Resolved,* that we will, and do hereby, transfer to Robert E. Coxe the corporate stock of the city of Huntsville in the Huntsville Gas-Light Company, in compliance with a contract entered into between Robert W. Coltart and said Coxe."  " *Resolved,* that the mayor, or his successor in office, be, and hereby is, empowered to assign said stock to said Coxe, according to the regulations of said company."  Acting under the authority thus conferred, Coltart assigned to said Coxe, on the books of the company, the fifty-four shares of stock held by the city.  The assignment was in these words :  " By authority and in pursuance of a resolution of the board of mayor and aldermen of the city of Huntsville, adopted on the 18th day of June, 1867, I, Robert W. Coltart, mayor of said city, do hereby transfer to Robert E. Coxe fifty-four shares of the capital stock of the Huntsville Gas-Light Company, being all of the said stock owned by the corporation of the city of Huntsville ; the certificates for which said shares have never been issued, or, if issued, have been lost, and can not be produced.  In witness whereof, I hereto set my hand, and affix the seal of said corporation, this 25th day of July, 1867."  This was signed, " R. W. COLTART, mayor ; " and the words added, " Signed and sealed in my presence, R. B. NOR-VILLE, secretary."

On the 10th November, 1876, the mayor and aldermen of Huntsville, as a corporation, filed the bill in this case, setting

out the facts above stated, and alleging that Coltart, in making said contract with Coxe, "acted merely for complainants and the stockholders of said company, and for himself to the extent of his own individual stock; that said Coxe knew, at the time said contract was entered into, that complainants were the owners of said fifty-four shares of stock, and were really the sole party beneficially interested in said contract to the extent of said shares, and that said Coltart had no interest in them, and owned only one hundred and ten shares of stock in said company, and was only acting in a representative capacity as to the balance of the stock agreed to be procured to be transferred by said Coltart to said Coxe, and that the following persons were the owners of said stock;" setting out the names of twenty-eight persons, and the amount of stock owned by each. The bill alleged, also, that Coxe, having procured under the contract a transfer to himself of nearly the entire stock of the company, proceeded to repair and put in operation the pipes and works of the company, adding to and improving them; that the entire amount expended by him for these purposes did not exceed $15,000, and for $10,000 of this amount he had executed a mortgage on all the property of the company, in January, 1872, in favor of the persons who had built the works; "that in violation of the stipulations of said contract, and in disregard of what he knew to be the rights of complainants, he increased the capital stock of said company, from 293 shares, of $25 each, to 1,800 shares of $25 each, an amount greatly in excess of any sum or sums by him expended, and has had stock certificates issued to himself for 800 shares, and values the stock transferred to him under said contract, which aggregated $5,875, at $20,000;" that "he refuses to account to complainants, or to any one else, for the said stock belonging to complainants which was so transferred to him upon the terms heretofore stated, and refuses to re-transfer to complainants, or any one else, one-third of said stock, or any portion thereof, or its value in the new stock issued to him, or to pay for it in any way; and claims that he holds it absolutely and unconditionally in his own right; and refuses to account to complainants, or to any one else, for the profits arising from the business of the company," and denies them access to the books of the company. The prayer of the bill was, that the court would "ascertain and determine, under said contract of assignment and transfer, the value of complainants' interest in the present capital stock of the said company, and the profits arising therefrom since the date of said transfer and assignment; and that for the value of said stock, as ascertained and determined, the said Coxe be required by the decree of this court, out of his stock in said company, to transfer and assign to complainants the amount so ascertained and

[City of Huntsville v. Huntsville Gas Light Co.]

determined, and to pay to complainants all the profits thereon since the date of said transfer and assignment to him," and be enjoined from disposing of the stock; and for other and further relief.

The Huntsville Gas-Light Company, Coxe, Coltart, and several other persons who were alleged to be holders of new stock in the company, were made defendants to the bill. A decree *pro confesso* was entered against Coltart. A joint and several answer was filed by the other defendants, denying that the complainants had any interest in the contract between Coxe and Coltart; alleging that Coxe dealt with Coltart individually for the transfer of the stock in the old company; denying that he had any notice that Coltart was acting as the agent or representative of any person but himself, and denying that Coltart did in fact act or assume to act for any person but himself; and as to the re-transfer of the stock, thus answering: "It is true that said Coxe has not re-transferred to said Coltart, or to any one else, one-third of the entire amount of the stock in said company transferred to said Coxe under said contract, or any part thereof; but respondents aver that, in lieu thereof, and in satisfaction and discharge of said Coxe's covenant so to re-transfer to said Coltart one-third of the capital stock in said company, Coxe paid to said Coltart five hundred dollars, which was received and accepted by said Coltart in satisfaction of said Coxe's obligation." The defendants also jointly demurred to the bill for want of equity, assigning several causes specifically; and all of them except Coxe jointly demurred, on the ground that they were not parties to the contract between Coxe and Coltart, and were improperly joined as defendants with Coxe.

The deposition of Coltart was taken by the complainants, in which he testified positively to the material facts as stated in the bill; alleging that, in making the contract with Coxe for the transfer of the stock, he only represented and acted for himself to the extent of stock which he then owned, and as to the residue of the stock acted as the agent of the complainants and other stockholders, and that these facts were communicated to Coxe, and were well known to him when the contract was entered into; and as to the $500 subsequently paid to him by Coxe, he alleged that this was in payment and satisfaction of his individual interest under the contract, and did not include the interest of the other stockholders. The deposition of Coxe, taken on behalf of the defendants, contradicted Coltart in all these points; alleging that he dealt with Coltart individually and personally, and had no knowledge or notice that any other person had or claimed any interest in or under the contract; and that he afterwards paid $500 to Coltart, on the 1st August,

1871, "for a full acquittal to me of all liability I was under to him under said contract."

The chancellor sustained the demurrer for misjoinder, and dismissed the bill as to all the defendants but Coxe and Coltart; and on final hearing, on pleadings and proof, dismissed the bill, holding that the complainants were not entitled to any relief.

The decree on the demurrer, and the final decree, are now assigned as error by the complainants.

HUMES & GORDON, for appellants.—The *gravamen* of the bill is to compel a transfer of stock on the books of the company, and an account of the profits received; and the alleged increase of the stock, in violation of the terms of the contract, was a question in which the stockholders were interested. Under these allegations, there was no misjoinder of parties defendant.—Barbour on Parties, 476; *Bank of America v. Pollock*, 4 Edw. Ch. 215. On the pleadings and proof, the complainants were entitled to relief. Coxe's defense is payment and satisfaction, and the *onus* of proving it was on him; and although he swears positively and emphatically to all the facts necessary to establish that defense, the testimony of Coltart, to the contrary, is equally positive and emphatic; and the transfer of the city's stock, on the books of the company, charges Coxe with notice of the city's interest and ownership, and of the terms on which the transfer was authorized. Stock in a corporation is treated as non-commercial paper, and a party who deals with any other person than the legal owner does so at his peril.—*Hall v. Rose Hill Road Co.*, 70 Illinois, 673; *Weaver v. Barden*, 49 N. Y. 286. If Coltart had intended and attempted, by the acceptance of the $500 paid him, to release and discharge the city's interest, as Coxe insists he did, the rights of the city would not have been prejudiced.—Wharton on Agency, §§ 128, 712; *Parsons v. Martin*, 11 Gray, 111.

WALKER & SHELBY, *contra.*—On the averments of the bill alone, the complainant corporation can maintain no action on the contract made by its agent in his own name; the corporation not being a party to the contract, and yet its name as principal being disclosed to the other contracting party. *Chandler v. Coe*, 54 N. H. 561, where the authorities are ably reviewed, and the distinction between known and unknown principals clearly pointed out; also, *Violett v. Powell*, 10 B. Monroe, 347; *Coxe v. Devine*, 5 Harr. Del. 375; *French v. Price*, 24 Pick. 13; *Kingsley v. Davis*, 104 Mass. 178; *Coleman v. First Nat. Bank*, 53 N. Y. 388; *Page v. Stone*, 10 Metc. 160; *Rankin v. Deforest*, 18 Barbour, 143; *Westmoreland v. Davis*, 1 Ala. 229; *Clealand v. Walker*, 11 Ala. 1059;

*Ruiz v. Norton*, 4 Cal. 355; 12 Cal. 35. The contracts of agents for corporations, or *quasi*-corporations, are no exception to this rule.—*Brown v. Rundlett*, 15 N. H. 360; *United States v. Parmele*, 1 Paine, C. C. 252. The contract being made by Coltart in his own name, and being under seal, its legal effect can not be varied by parol evidence.—Wharton's Evidence, vol. 2, §.950; *Countess of Rutland's case*, 5 Co. Rep. 26 *a*; *Chandler v. Coe*, 54 N. H. 561; *Briggs v. Partridge*, 64 N. Y. 357; *Townsend v. Hubbard*, 4 Hill, N. Y. 351; *Huntington v. Knox*, 7 Cush. Mass. 374. Without an allegation of fraud or mistake, the rule in equity, as to the admissibility of such evidence, is the same as at law.— *Ware v. Cowles*, 24 Ala. 446; *Frederick v. Youngblood*, 19 Ala. 680. On the merits, the case is with the defendant. If he can be sued by these complainants, on his contract with Coltart, each of the other stockholders, more than eighty in number, has an equal right of action. Having contracted with Coltart only, he could rightfully settle with Coltart, as he is shown to have done. As to the terms of the settlement, the testimony of Coxe and of Coltart is in conflict; and in this state of the evidence, the decision of the chancellor will not be disturbed.

SOMERVILLE, J.—The contract made between Coltart and Coxe is not, on its face, difficult of construction. Its language is explicit and unambiguous, and it has been reduced to writing under the seal of the contracting parties. Apart from the influence of parol evidence, it bears the most cogent impress of the mutual intention of each party to contract in his own name, as principal, and clearly excludes all supposition of agency, especially on the part of Coltart. He assumes duties inconsistent with those of a mere representative, or agent. He obligates himself "to *procure* and *effect*," within thirty days from the date of the agreement, the transfer to Coxe of all the stock in the Huntsville Gas-Light Company, and also the conveyance of a certain parcel or lot of land in the city of Huntsville. This clearly implied the idea of a negotiation by Coltart with the owners of this stock and of the land, with the view of securing its purchase and transfer. There is no agreement on Coxe's part to pay the owners of the stock or land anything. He is to pay Coltart, and by strong implication him alone, the sum of one thousand dollars, and to transfer to him *one-third* of the stock, the purchase of which he succeeded in negotiating, including his own. It is a very material fact, that Coltart owned in his own right about one-third of the entire stock in this company. He, in effect, then, is permitted by the contract to retain his own stock, and is to receive one thousand dollars for the other two-thirds, including the lot or parcel of

land. No new stock is to be issued, except that agreed to be issued to Coxe for the money expended by him in repairs and improvements. The agreement clearly contemplates, too, that the *only stockholders*, in view of the new management, would be *the two contracting parties*, *Coltart and Coxe*. It may be that, if Coxe had clearly understood that the stock agreed to be transferred to Coltart, was really intended for the benefit of complainant and some *four score* others of stockholders, who would thus be entitled to a voice in its management, he would have instantly declined to make the trade evidenced by the agreement in question. It is unnecessary, however, to determine to what extent, if at all, parol evidence would be admissible to prove an interest in an undisclosed principal, in this particular aspect of the contract, where the idea of agency seems cautiously to have been excluded, and the written contract is under seal.

It is sufficient, for the purpose of this decision, that the complainant authorized the transfer of fifty-four shares of stock owned by it, upon the basis of this written agreement, and, therefore, subject to all the equities and rights of the parties to it. The minutes of the proceedings of the board of mayor and aldermen recite the fact of transfer as being "in compliance with a contract entered into between *Robert W. Coltart* and said Coxe." They can claim no right from a misconstruction of the contract, with the error of which Coxe had no connection. It is unambiguous, and if they have failed to interpret it correctly, it is their misfortune.

It is true that the bill in this case avers that Coltart contracted as agent, and a knowledge of this fact is imputed to Coxe. The notice of such agency is testified to by Coltart on the one hand, and is denied with equal explicitness by Coxe on the other. Granting the admissibility of such evidence, the *onus* of proving such notice would rest on the complainant, and this he has failed to establish by the requisite preponderance of proof.

It may be admitted, that where an agent, having the proper authority, contracts in his own name for the benefit of a principal, the general rule is, that a principal who is *unknown*, or undisclosed, and perhaps also one who is *known* to the other contracting party, may, if he choses, take advantage of such contract, and sue on it in his (the principal's) name.—Bishop on Contr. § 360. But there are exceptions to this rule, and one of them is, where an agent has been allowed to contract as principal without notice, the principal takes the contract subject to all the equities and rights of which the other contracting party might avail himself in the transaction as against the

agent, assuming him to have been the real and only principal. Ewell's Evans on Agency, pp. 396, and *note;* and 404.

We think the evidence supports the conclusion, that Coltart sold his entire interest under this contract to Coxe for the sum of five hundred dollars, before he had notice of any equity claimed therein by the complainant. The only interest he had, after the receipt of the thousand dollars originally paid, was the right to have transferred back to him one-third of the old stock, the transfer of which he procured to be made to Coxe, in the first instance. This interest he has parted with by release to Coxe.

The bill was properly dismissed, we think, and the decree of the chancellor must be affirmed.